UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| SCOTT et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | 1:08-cv-0150-SEB-TAB |
| vs. ) | |
| ) | |
| THE CITY OF INDIANAPOLIS et al., ) | |
| ) | |
| Defendant. ) | |

**ORDER DENYING MOTION TO EXCLUDE EXPERT TESTIMONY**

This cause is before the Court on Defendant The City of Indianapolis's ("The City") Motion to Exclude the Trial Testimony of Plaintiffs' Expert, Dr. Palmer Morrel-Samuels [Docket No. 59], filed on July 2, 2009. In its Motion to Exclude, the City argues 1) that Dr. Morrel-Samuels is not performing expert analysis or testimony and is therefore a lay witness; 2) if Dr. Morrel-Samuels is considered an expert witness, that he failed to describe adequately the methodology used to reach his conclusions, and; 3) that the conclusions Dr. Morrel-Samuels offers constitute a legal opinion. For the reasons detailed in this entry, Defendant's Motion to Exclude is DENIED.

*Factual Background*

In 1978, the United States brought an action against the City alleging race and gender discrimination within the Indianapolis Police Department ("IPD") and the Indianapolis Fire Department ("IFD"). As a result of that litigation, two consent decrees

as well as an addendum were entered in 1978, 1979, and 1981, respectively.  Each of these orders set minimum hiring and promotional goals for race and gender within the IPD and IFD, and were dissolved on August 28, 2008.

In December 2006, the Chief and the Fire Merit Board authorized promotions to Lieutenant and Captain, which, in effect, skipped over white officers who were ranked higher on the IFD's merit list in favor of allegedly less-qualified black officers.  In 2008, Plaintiffs filed this suit alleging that the December 2006 promotions were impermissibly based on race, in violation of the Equal Protection Clause of the Fourteenth Amendment and Title VII of the Civil Rights Act of 1964.

## *Discussion*

The City seeks to have the Court exclude as evidence at trial the testimony of Plaintiffs' expert Dr. Palmer Morrel-Samuels.  The admissibility of expert testimony is governed by the framework set out in Federal Rule of Evidence 702 and Daubert v. Merrell Dow Pharms. Inc. 509 U.S. 579 (1993).  Applying this framework, courts must undertake:

> a three-step analysis: the witness must be qualified "as an expert by knowledge, skill, experience, training, or education"; the expert's reasoning or methodology underlying the testimony must be scientifically reliable; and the testimony must assist the trier of fact to understand the evidence or determine a fact in issue.

Ervin v. Johnson & Johnson, Inc., 492 F.3d 901, 904 (7th Cir. 2007) (quoting Fed.R.Evid. 702); see also Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 141 (1999) (extending the Daubert admissibility framework to expert testimony in the social sciences).  "The

Daubert standard applies to all expert testimony, whether it relates to areas of traditional scientific competence or whether it is founded on engineering principles or other technical or specialized expertise." Smith v. Ford Motor Co., 215 F.3d 713, 719 (7th Cir. 2000) (citing Kumho, 536 U.S. at 141).

## I. *Palmer Morrel-Samuels' Qualifications*

We begin with an analysis of Dr. Morrel-Samuels's expertise in order to determine whether he is qualified to perform the calculations and arrive at the conclusions contained in his report. "A court should consider a proposed expert's full range of practical experience as well as academic or technical training when determining whether that expert is qualified to render an opinion in a given area." Smith, 215 F.3d at 718. The "scientific knowledge" contemplated by Daubert "connotes more than subjective belief or unsupported speculation." Porter v. Whitehall Labs., Inc., 9 F.3d 607, 613-14 (7th Cir. 1993). To suffice, the proffered expert's must have "a grounding in the methods and procedures of science." Daubert, 509 U.S. at 590.

The City does not challenge Dr. Morrel-Samuels's qualifications to provide the evidence contained in his opinion. Dr. Morrel-Samuels possesses a graduate degree in research methodology from the University of Chicago as well as a Master and Doctor of Philosophy in experimental social psychology from Columbia University. He has more than twenty years of consulting experience designing and analyzing assessments for large corporations, and has worked as a researcher or faculty member at several universities. He has published scholarly articles in peer-reviewed journals concerning the use of

statistics in the context of employment decisions, and has provided statistical analysis in numerous cases involving disparate impact. Based on this experience and knowledge, we find that Dr. Morrel-Samuels is clearly qualified to testify as an expert on the issues presented in this case.

## II.    *The Reliability and Helpfulness of Dr. Morrel-Samuels' Testimony*

Even a "supremely qualified expert cannot waltz into the courtroom and render opinions unless those opinions are based on some recognized scientific method and are reliable and relevant under the test set forth by the Supreme Court in Daubert." Clark v. Takata Corp., 192 F.3d 750, 759 n.5 (7th Cir. 1999). The testimony of a "well credentialed expert who employs an undisclosed methodology" or who offers opinions lacking "analytically sound bases" must be excluded. Tuf Racing Products, Inc. v. American Suzuki Motor Corp., 223 F.3d 585, 591 (7th Cir. 2000). Thus, although the Court's role does not include an assessment of the credibility or persuasiveness of the proffered testimony, which factual issues are left for the jury to determine, Deputy v. Lehman Brother's, Inc., 345 F.3d 494, 506 (7th Cir. 2003), the Court, "in its role as a gate-keeper," must nonetheless determine if Dr. Morrel-Samuels's opinions are based on reliable methodology, and whether they would be helpful to a jury. Winters v. Fru-Con, Inc., 498 F.3d 734, 743 (7th Cir. 2007).

The City challenges Dr. Morrel-Samuels's testimony on the following grounds: 1) that Dr. Morrel-Samuel has not performed expert analysis or testimony and therefore must be viewed as a lay witness; 2) if Dr. Morrel-Samuels is considered an expert

witness, that he failed to adequately describe the methodology used to reach his conclusions, and; 3) that the conclusions Dr. Morrel-Samuels offers constitute legal opinions.

      The City's first argument, that Dr. Morrel-Samuels has not performed expert analysis or testimony, and therefore must be viewed as a lay witness, is without merit. The City bases this argument on a statement in the Plaintiffs' Sur-Reply to Defendant's Motion for Summary Judgement, (Dkt. No. 55 p. 2), that "most of Dr. Morrel-Sameul's (*sic*) conclusions are based on simple addition, subtraction, and the calculation of percentages." The City asserts that, because Dr. Morrel-Samuels's "conclusions are based upon simple arithmetic," that "he should not be permitted to testify as to any conclusions or analysis which is based upon any purported scientific, technical or other specialized knowledge." (Def. Brief at 1-2). The City contends that there is nothing that Dr. Morrel-Samuels offers by way of analysis that could not be accomplished by the fact-finder alone.

      In making this argument, the City oversimplifies Dr. Morrel-Samuels' analysis. It would be unreasonable to expect a lay jury to effectively examine the data contained in the Consent Decree reports, calculate the percentages, and interpret their meaning without the aid of a mathematical expert. Specifically, step two of Dr. Morrel-Samuels's analysis, the calculation of the degree of alleged overcorrection by the IFD, requires a statistical analysis beyond the capabilities of a lay jury. Therefore, on this point, the City's argument fails.

      The City's second argument, that as an expert witness Dr. Morrel-Samuels failed

to describe adequately the methodology he used to reach his conclusions, is also without merit. Because Dr. Morrel-Samuels's analysis contains two parts, we shall discuss his methodology in each part separately.

The first goal of Dr. Morrel-Samuels's analysis was "to determine whether the [IFD] has met the benchmark goals for hiring and promotion of minority applicants set out in the Consent Decrees." (Dkt. No. 44-4, paragraph 4.) As Dr. Morrel-Samuels describes in his affidavit, to answer this question he examined the Consent Decree reports that contained relevant demographic data of IFD employees, and compared that data to data taken from the U.S. Census showing the percentage of racial minorities in the eight-county region from which IFD draws its employees. (Dkt. No. 44-4, paragraphs 5, 6). Based upon this comparison, Dr. Morrel-Samuels determined that in each of the twenty-four cases where the IFD hired or promoted a group of applicants under the Consent Decree, the IFD met or surpassed the benchmark goal for hiring or promoting minority applicants. The City asserts that these conclusions are "unreliable because they are not based on any articulated theory, methodology, or standards. [Dr. Morrel-Samuels] does not describe the manner in which he arrives at his opinion other [than] he 'compared data.'" (Def. Brief at 5).

It is unclear exactly what additional description the City seeks here. Dr. Morrel-Samuels applied his expertise in research and matters of employment to gather relevant data from the Consent Decree reports, to which he applied simple mathematical procedures to determine percentages, and constructed a table by which the two sets of data could be compared side-by-side. No further explanation seems necessary. Dr.

Morrel-Samuels's methodology which underlies his testimony - the application of accepted mathematical principles - is sufficiently scientifically reliable to satisfy the requirements of Daubert.  Therefore, we find that Dr. Morrel-Samuels's explanation was sufficient as to his methodology in reaching his conclusion in part one of his analysis.

The second part of Dr. Morrel-Samuels's analysis involved determining whether the IFD in making these hiring decisions had overcorrected, that is to say, it hired more minorities than necessary to meet the benchmark goals as set forth by the Consent Decree. His conclusion was that "the IFD had substantially overcorrected . . . in eighteen of the twenty-four instances where the IFD was required to meet the benchmark goal . . . [the] IFD surpassed the benchmark goal by a statistically significant margin, meaning that the magnitude of overcorrection in these eighteen cases could not be accounted for by chance alone."  (Dkt. 44-4, paragraph 8.).

The City asserts that Dr. Morrel-Samuels refers to the methodology used to reach his conclusion only as a "binomial test", but does not adequately describe "what [it] is, how it is used, why it is reliable, or if it is a generally accepted test in the field in which he professes to be an expert." (Def. Brief at 6).  The binomial distribution test is not an obscure or mysterious method that requires extensive explanation; rather, it is a fairly common method of statistical analysis that on prior occasions the Seventh Circuit has described as "appropriate" in employment discrimination cases.  See Coates v. Johnson & Johnson, 756 F.2d 524, 537 n. 11 (7th Cir. 1985).  It is also a test that this Court is familiar with.  See Eli Lily and Company v. Teva Pharmaceuticals U.S.A., Inc., 2004 WL 1724632, at *7 (S.D. Ind. 2004) (unpublished).  Because the binomial distribution test is a

method that is accepted and recognized in the relevant scientific community, we conclude that Dr. Morrel-Samuels utilized a sufficiently reliable methodology in evaluating the data before him, and that his testimony thus meets the standard outlined in Daubert.

The City's third argument, that the conclusions Dr. Morrel-Samuels offers constitute legal opinions, is also without merit. The City contends that that Dr. Morrel-Samuels "opines that [the] IFD satisfied the hiring goals as required by the Consent Decree," but that "he is in no position to make a determination that vestiges of past discrimination are now removed as required by the Decree." (Def. Brief at 7). We find that Dr. Morrel-Samuels has made no such statement regarding the "vestiges of past discrimination," but instead offers only factual conclusions based on mathematical principles. Dr. Morrel-Samuels's first conclusion, that the percentage of minorities promoted by the IFD is greater than the percentage of minorities in the eight-county Indianapolis labor market, is a straightforward factual assertion. Dr. Morrel-Samuels's second conclusion, that in some instances the City overcorrected and hired minorities in excess of the benchmark requirement to a statistically significant degree, is also a factual opinion based upon mathematical theory. These opinions by Dr. Morrel-Samuels are strictly factual in nature and do not constitute legal opinions.

We also find that Dr. Morrel-Samuels's testimony will no doubt assist the trier of fact. Dr. Morrel-Samuels conducted an examination of the extensive Consent Decree reports, compared the relevant data contained therein to demographic data from the surrounding area, and used his scientific expertise to provide an analysis of the IFD's compliance with the Consent Decree. Dr. Morrel-Samuels's expertise in statistical

analysis in the context of employment matters establishes that his testimony will be helpful to the resolution of the factual issues at stake.

Based on Dr. Morrel-Samuels's educational background, his experience in conducting statistical analyses similar to those used here, and the reliability of his methodology, we find that his expert testimony is admissible. For all the foregoing reasons, the City's Motion to Exclude must be DENIED.

### III. Conclusion

Having carefully considered the parties' arguments regarding the admissibility of Dr. Morrel-Samuels's testimony, we conclude that his testimony meets the standards set out in Daubert and Rule 702 of the Federal Rules of Evidence and is therefore admissible. Accordingly, Defendant's Motion to Exclude is DENIED.

IT IS SO ORDERED.

Dated: 03/25/2010

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Jonathan Lamont Mayes
CITY OF INDIANAPOLIS, CORPORATION COUNSEL
jmayes@indygov.org

Richard G. McDermott
CITY OF INDIANAPOLIS, CORPORATION COUNSEL
rmcdermo@indygov.org

Jeffrey S. McQuary
BROWN TOMPKINS LORY
jmcquary@brown-tompkins-lory.com

Justin F. Roebel
CITY OF INDIANAPOLIS, OFFICE OF CORPORATION COUNSEL
jroebel@indygov.org